SAMUEL F. RUDDEROW, COLLECTOR OF THE NORTH WARD IN THE CITY OF CAMDEN, v. THE STATE, THE WEST JERSEY FERRY COMPANY, PROSECUTOR.

1. Under the supplement to the tax laws, approved March 28th, 1862, private corporations must be assessed on the full amount of their capital stock paid in without deduction for losses, and not according to the market value of the stock at the time of the assessment.

2. The provisions of several apparently conflicting provisions of the act discussed.

Error to the Supreme Court.

See case reported, 1 *Vroom* 405, 412, 421.

For plaintiffs in error, *Geo. M. Robeson* and *Peter L. Voorhees*.

For defendant, *A. Browning* and *S. H. Grey*.

The opinion of the court was delivered by

ELMER, J. The assessment of taxes for the year 1862 was made upon the West Jersey Ferry Company, for the full amount of its capital stock paid in, being six hundred shares of five hundred dollars each. It was shown that the full and fair value of the said shares at the price they would sell for, at the time of the assessment, was three hundred dollars for each share, and the Supreme Court adjudged that the assessment as made was erroneous, and that the tax must be reduced from the sum of two thousand six hundred and forty dollars, to the sum of fifteen hundred and eighty-four dollars. The question now to be decided is, whether the further supplement to the tax laws, approved March 28th, 1862, required the assessment to be upon the amount of the capital stock of the company originally paid in, without deduction for losses, as made by the assessor, or according to the full and fair value of the stock, as held by the court.

That the legislature had full power to require the taxes to be assessed upon the principle adopted by the assessor, was not denied. Our state constitution contains no restrictions upon the power of taxation, and in the absence of such restrictions or of restrictions in the constitution of the United States, all persons inhabiting or doing business in the state, whether individual citizens or artificial persons doing business as corporations by virtue of legislative grants, may be taxed, at the discretion of the legislature, to such extent as

the public exigencies may require; and such taxation may be universal or limited, discriminating or general, equal or unequal. For many years during our colonial government, and under the original and the existing state constitutions, taxes were assessed upon land according to some ratio of value, discriminating between farm land and town property, in favor of the former; and upon certain designated descriptions of real and visible personal property at arbitrary rates, fixed within certain limits by the law, and hence called certainties. It was not until so recent a period as 1851, that a law was passed to tax all descriptions of property, including bonds, notes, and stocks, upon an equal ratio according to its actual value. The act of 1854, *Nix. Dig.* 850, parts of which are still in force, contains the details of this system, as acted upon until it was altered by the act of 1862. Upon comparing these acts, it is very apparent that the main object of the change, was to charge the tax directly upon private corporations by a fixed standard, without any deduction for debts or liabilities, instead of assessing the tax only against such holders of the stock as might reside in the state, at its actual value to them, after deducting their individual debts.

By the eighth section of this act it is enacted, "that all private corporations of this state, except those which by virtue of any irrepealable contract in their charters, or other contracts with this state, are expressly exempted from taxation, shall be and are hereby required to be respectively assessed and taxed at the full amount of their capital stock paid in and accumulated surplus; but any real estate which such corporations may lawfully own in any other state than this state, shall not be liable to be estimated in such accumulated surplus, and the persons holding the capital stock of such corporations shall not be assessed therefor; and such corporations as have no capital stock, shall be assessed for the full amount of their property and valuable assets, without any deduction for debts and liabilities." That the intention was to require the assessment to be made upon the capital stock that had been actually paid in, and upon the

surplus accumulated by the corporation in the course of its business, if there was any, without any reference to the actual value of the stock, seems here to be very plainly expressed. And when it is remembered that the incorporated banks of the state, have been since 1810 and still are, *Rev. Laws* 546, *Nix. Dig.* 849,* required to be assessed in language nearly identical; and that so long ago as in 1822, it was decided by the Supreme Court, in the case of *Gordon* v. *The New Brunswick Bank,* 1 *Halst.* 100, and has ever since been the rule, that although the capital may have been reduced by losses, the tax must be paid on the amount of the capital paid in, unless reduced by a legislative act, it seems impossible to doubt that this well understood meaning of the expression, "amount of capital stock paid in," was meant to be applied to all corporations which have a capital stock. It is not merely corporations having a capital stock paid in and having also an accumulated surplus, which are thus to be assessed, but all private corporations of this state having a capital stock paid in, except those which in a specified manner are expressly exempted from taxation; language plainly including as well those that have not as those that have an accumulated surplus.

No principle is better settled, or more important to be faithfully adhered to by courts called upon to enforce written statutes, than that in the absence of ambiguity in the language used, no exposition shall be made which is in opposition to the express words; or as the maxim is sometimes expressed, it is not allowed to interpret what has no need of interpretation. The rule, with its limitation, is stated by Judge Washington in the case of *United States* v. *Fisher,* 2 *Cranch* 399, as follows: "Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. But if from a view of the whole law, or from other laws in *pari materia,* the evident intention is different from the literal import of the terms employed to express it

* *Rev., p.* 1147.

in a particular part of the law, that intention should prevail, for that in fact is the will of the legislature."

Our next inquiry then is, does a view of the whole law now in question, show an evident intention different from the literal import of the terms employed to express it in the eighth section, as has been so strongly insisted by the counsel of the company? The first section enacts, "that there shall be assessed, levied, and collected, on the inhabitants of this state, and on their taxable real and personal property, and upon the other objects of taxation hereinafter specified, a state tax, &c." The fifth section is, that for the purpose of raising the sums required to be raised by this act, and the sums required to be raised for county, city, township, or other public taxes, the persons and property hereinafter specified shall be assessed and taxed as hereinafter provided." The sixth section directs the assessment of a poll tax on certain inhabitants of the state. The seventh enacts "that all real and personal estate within this state, whether owned by individuals or corporations, shall be liable to taxation, in the manner and subject to the exemptions hereinafter specified, and shall be assessed at the full and actual value thereof." These provisions, and especially the seventh section, are relied upon as controlling the language of the eighth section, and as showing that it is to be understood to mean something different from what it plainly expresses. In my opinion, however, the additional provisions of the eighth section, and of the ninth and tenth, instead of being controlled by the previous sections, which, if they stood alone, might be held to direct the taxation of the property of all private corporations in the same manner as other property is directed to be taxed, plainly show that a rule was meant to be applied to corporations peculiar to them, and different from that applied to individuals. Unless it be held that the eighth and ninth sections were designed to modify the general language of the seventh section, they are useless, and we shall thus wholly reject an important part of the statute, regardless of that rule of construction which requires every

part to be so expounded, if practicable, as to give it full effect. It is indeed one of the plainest rules of evidence, commending itself to the common sense of mankind, that all that is said in a verbal communication, and all that is expressed in a written instrument, shall be duly considered, and no part of it denied its proper meaning. The first section indicates, that it was afterwards intended to specify " other objects of taxation," besides inhabitants and their real and personal property. These other objects, as the eighth, ninth, and tenth sections show, are private corporations of this state, and corporations regularly doing business in this state, and not being corporations of this state; and both descriptions of corporations are designed to be taxed upon a different principle from that applied to individuals.

The ninth section requires the officers of corporations, when applied to by the assessor, to give him a true statement under oath, not of the full and actual value of the stock, but the amount of the capital stock paid in and accumulated surplus, or of the taxable property and assets of such corporation. Indeed the capital stock cannot properly be said to have any actual value to the corporation itself. It has a value to the several stockholders, in whose hands that value is compounded of the chances of dividends, and of the actual or prospective value of the property held in the corporate name. Under existing circumstances the value of the stock is well known, in many instances, far to exceed the value of the property, while in some cases it is less. It cannot be doubted, I think, that the intention of the legislature was to require the officers of the corporation to state the amount of the capital stock which had been actually paid in at the organization of the company, or at any subsequent time, and the accumulated surplus, as the same are shown or ought to be shown by their books; which as a general rule will be the amount of capital upon which it is authorized to transact its business. The fact that not only the capital paid in is to be stated, but also the surplus accumulated by the business done, shows that it was not intended to ascertain or to have any

regard to the selling price of the stock, which so far as it was above par, would represent that surplus, so that if thus taxed, there would be to that extent a double taxation.

Much stress was laid by counsel on the provisions of the fourteenth section, which make it the duty of the assessors, "in assessing any property to be assessed under this act, to assess and value such property at its full, fair value, and at such price as in his judgment said property would sell for at a fair and *bona fide* sale by private contract, at the time such assessment is made, and that every assessor shall annex to his duplicate an oath or affirmation in writing, that all assessments in the said duplicate contained, have been made according to the requirements of this section." If the intention of the eighth section was as has been stated, to require private corporations having a capital stock to be taxed on its amount, and not on the value of the stock or of their property, this section does not conflict with that, because it is only in assessing property that the assessors are to ascertain the value. This section no more applies to an assessment of such a corporation, than it does to the assessment of the poll taxes required by the sixth section, although both are to be stated in the duplicate.

It may be true, as was so strongly urged, that there is at least a seeming hardship in assessing a corporation whose capital stock has become reduced by losses, or by the depreciation of its property, at the amount of capital originally paid in, without regard to its present investment or value, and that this consideration ought not to be overlooked in ascertaining the real meaning of the law. But where the intention is too plainly expressed to be mistaken, as is believed to be the case in this instance, it is the duty of the court, whatever may be the opinion of individual judges in regard to the policy of the act, to give it effect without attempting by very uncertain inferences to explain it away, and thus to defeat the expressed will of the power directly accountable to the people for its exercise, and upon whom the responsibility rests of providing for the public necessities,

by taxes adequate to the emergency. If experience shall prove that the complaints of injustice, now so freely indulged, are well founded, there can be no doubt that they will soon be removed by proper amendments of the system. There is, however, reason to suspect that the injustice complained of is much overrated. In many cases the mode of assessment adopted is more beneficial to the corporation than it would be to value the stock at its selling price; while in others, like the one before us, the latter mode would be most to its advantage. It is exceedingly difficult, if not impracticable, to adopt any general rule which will not sometimes bear hard upon particular cases. There are, no doubt, many insolvent corporations whose capital stock has been all lost, and who have ceased to do business. Having no property out of which a tax can be levied, no prudent assessor will attempt to impose a worthless tax. But where the corporation continues its organization and business, and allows its capital stock to remain, at least nominally, at its original amount, those interested and managing its concerns have no reason to complain, that the company is assumed to have unimpaired, what it certainly once possessed, and what it allows the public to understand it still possesses. Were there no means of obtaining a legal recognition of the fact that the capital has been reduced, this might perhaps be a severe rule. This, however, is not the case. The act authorizing the establishment of corporations for manufacturing and other purposes, expressly provides, *Nix. Dig.* 459, § 22,* that every such company may, by a vote of two-thirds in interest of the stockholders or their representatives, reduce its capital stock. Such companies as have preferred to obtain special charters from the legislature, and have omitted to embody therein a similar provision, must of course obtain a special law to effect this object; but this has been repeatedly done, and doubtless will continue to be done in all proper cases.

In my opinion the judgment of the Supreme Court, reducing the tax imposed on the prosecutors of the *certiorari*

---

*Rev., p. 182, § 33.

in this case, was erroneous, and must be reversed, and the assessment as originally made must be confirmed.

*Judgment reversed.*

*For reversal*—BEASLEY, C. J., CORNELISON, ELMER, FORT, GREEN, CH., HAINES, KENNEDY, WALES.    8.

*For affirmance*—CLEMENT.    1.

